Matthew S.L. Cate (SBN 295546)
matt@matthewcatelaw.com
LAW OFFICE OF MATTHEW S.L. CATE
101 Montgomery Street, Suite 900
San Francisco, CA 94104
Tel/Fax: 415-964-4400

D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
222 Sutter Street, #600
San Francisco, CA 94108
Telephone: (510) 982-2890
Fax: (510) 849-6141
vbaranetsky@cir.org

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **The Center for Investigative Reporting**,<br><br>Plaintiff,<br><br>v.<br><br>**United States Immigration and Customs Enforcement, *et al.***,<br><br>Defendants. | Case No. 3:26-cv-2414-RFL<br><br>**First Amended Complaint for Injunctive Relief** |

The Center for Investigative Reporting ("CIR") brings this suit against the United States Immigration and Customs Enforcement ("ICE") and United States Customs and Border Protection ("CBP"), stating in support:

## Introduction

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief.

2. Through the FOIA, CIR seeks disclosure of public records, including video footage possessed by ICE and CBP relating to immigrant deportation actions conducted in Minnesota in January 2026.

3. According to reports, ICE and CBP have actively used video footage of immigration raids to promote their operations and to try to improve their public image.

4. Many of the requested records are nearly identical in nature to records that the agency has previously released to the public.[1]

5. Neither agency complied with FOIA's statutory deadlines. Both have improperly and unlawfully withheld public records responsive to CIR's FOIA requests.

6. ICE and CBP have therefore violated the FOIA and have contravened the FOIA's purpose, because the withheld information will greatly inform the public about "what their government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989).

7. CIR now asks the Court for an injunction requiring the agencies to promptly release the withheld records.

## Jurisdiction

8. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## Venue and Division Assignment

9. CIR has its principal place of business in this district. Venue is thus proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402.

10. Assignment to the San Francisco Division or the Oakland Division is proper pursuant to Local Rules 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in San Francisco County, where CIR's principal place of business is located and most actions in this case occurred.

---

[1] *See Immigrant Legal Defense v. U.S. Dep't of Homeland Security, et al.*, 3:23-cv-06348 (N.D. Cal Sept. 29, 2025); *see also* Immigrants' Rights Clinic, *Ice, Camera, Action: Exposing ICE's Filming Operation*, Stanford Law School, https://perma.cc/9JHN-RB89.

## Parties

11. Founded in 1976 as the first national investigative news organization, CIR has received multiple awards for its reporting. CIR is a non-profit established under the laws of the State of California, with its primary office in San Francisco, California. CIR publishes Reveal, an online news site at revealnews.org, a weekly public radio show (also called Reveal) with approximately 1 million listeners a week, and *Mother Jones* magazine.

12. ICE is a federal agency within the meaning of 5 U.S.C. § 552(f). CIR is informed and believes that ICE has possession and control of the records sought by the FOIA requests.

13. CBP is a federal agency within the meaning of 5 U.S.C. § 552(f). CIR is informed and believes that CBP has possession and control of the records sought by the FOIA requests.

## Background

### A. ICE and CBP conduct deportation operations in the Minneapolis area.

14. In late 2025 and early 2026, federal immigration authorities carried out a series of intensive deportation operations in Minneapolis and surrounding area known as "Operation Metro Surge."[2]

15. Operation Metro Surge involved thousands of federal agents, leading to thousands of arrests, including of U.S. citizens such as Mubashir Hussen, and several fatal encounters between federal officers and civilians.[3]

---

[2] Rebecca Boone, *A timeline of Trump's immigration crackdown in Minnesota*, PBS NEWSHOUR (Feb. 13, 2026), https://perma.cc/6A4V-JBX6.

[3] *Federal immigration officials arrest 2,400 people since Operation Metro Surge began*, KARE 11 (Jan. 13, 2026), https://perma.cc/ZFN5-2EFX; *ACLU Sues Federal Government to End ICE, CBP's Practice of Suspicionless Stops, Warrantless Arrests, and Racial Profiling of Minnesotans*, ACLU OF MINNESOTA (Jan. 15, 2026), https://perma.cc/96TL-WAQE.

16. The scale and intensity of ICE's operations have produced not only individual enforcement actions but also broad, community-wide consequences affecting mobility, the economy, and public life.[4]

17. Local officials documented mounting reports of aggressive tactics, wrongful detentions, and uses of force, generating widespread public alarm and urgent calls for transparency.[5]

18. Public oversight of these operations is particularly warranted because serious questions have already been raised about the federal government's record-keeping and transparency regarding immigration enforcement activities.[6]

**1. ICE agent fatally shoots Renee Good**

19. On January 7, 2026, an altercation occurred between Renee Good, a United States citizen residing in south Minneapolis, and an ICE officer around East 34th Street and Portland Avenue.[7]

20. After officers instructed Good to exit her vehicle, they shot her several times, killing her with a fatal shot to the head.[8]

---

[4] Maanvi Singh, *The Minnesotans trapped at home, too terrified of ICE to go outside: 'Our house is like a jail'*, THE GUARDIAN (Feb. 9, 2026), https://perma.cc/VRD8-6VVE ("Immigrants, as well as a range of residents who fear they may be apprehended by agents due to the color of their skin or their accents, have ceased to leave the safety of their homes"); Adam Duxter, *SOS put out for Twin Cities small businesses amid ICE surge*, CBS NEWS (Feb. 6, 2026), https://perma.cc/N37M-SBMP (reporting city revenue losses of $10 million–$20 million per week and tens of millions in corridor losses); Meg Anderson, *The ICE surge is fueling fear and anxiety among Twin Cities children*, NPR (Jan. 22, 2026), https://perma.cc/S2Y3-ZJKZ; Daniel Payne, *Fearing ICE crackdown, immigrants nationally are avoiding treatment, sometimes with dire consequences*, STAT (Feb. 3, 2026), https://perma.cc/KK7Q-NR8R.

[5] Sarah Raza, *Minneapolis police chief criticizes ICE tactics after clash with protesters*, ASSOCIATED PRESS (Dec. 17, 2025), https://perma.cc/6MFT-9U58.

[6] *See, e.g.*, Mina Bloom, *Feds Repeatedly Lied and Misled the Public During Chicago Immigration Crackdown, Federal Judge Rules* (reporting that a federal judge found immigration officials repeatedly misled the public and ordered restrictions to ensure accountability and transparency), BLOCK CLUB CHICAGO (Nov. 25, 2025), https://perma.cc/EB72-SNSS.

[7] *Minneapolis responds to fatal shooting of woman by federal agent,* MINNEAPOLIS CITY GOVERNMENT (Jan. 7, 2026) https://perma.cc/D8FZ-NDMR.

[8] *Id.*

21. U.S. Department of Homeland Security Secretary Kristy Noem claimed the ICE agent acted in self-defense and characterized Good as a "domestic terrorist" who had weaponized her vehicle.[9]

22. Cellphone footage apparently filmed by the ICE agent who shot Good was released shortly after her killing.[10] Other contemporaneous video and other records documenting the incident have not been fully disclosed.

**2. ICE agent fatally shoots Alex Pretti**

23. On January 24, 2026, an altercation between federal officers and Alex Pretti resulted in the death of the 37-year-old Minneapolis resident.[11]

24. Available video footage indicates that Pretti was recording federal agents before the encounter and tried to put himself between a federal officer and someone wearing an orange backpack.[12] Officers pepper sprayed Pretti and, within seconds, fired multiple shots into Pretti's body while he was on the ground.[13]

25. Pretti was declared dead on the scene with at least three bullet wounds in his back, and additional wounds in his upper chest and neck.[14] Two of the federal officers were identified to be Border Patrol agents assigned to Operation Metro Surge.[15]

---

[9] Maria R. Uribe & Amy Sherman, *Experts question Noem calling Good a 'domestic terrorist.' Here's what the term means*, PBS NEWS (Jan. 10, 2026), https://perma.cc/GHV9-X6GW.

[10] Elaine Okyere, *Video emerges of Minneapolis shooting filmed by ICE agent who opened fire*, BBC NEWS (Jan. 10, 2026), https://perma.cc/D3WL-GGPD.

[11] Bora Erde ET AL., *Timeline: A Moment-by-Moment Look at the Shooting of Alex Pretti*, THE NEW YORK TIMES (Updated Jan. 25, 2026), https://perma.cc/S68X-JV2T.

[12] Gaby Vinick ET AL., *A minute-by-minute timeline of the fatal shooting of Alex Pretti involving federal agents*, ABC NEWS (Jan. 26, 2026), https://perma.cc/V4SY-9W3J.

[13] Bora Erde ET AL., *Timeline: A Moment-by-Moment Look at the Shooting of Alex Pretti*, THE NEW YORK TIMES (Updated Jan. 25, 2026), https://perma.cc/S68X-JV2T.

[14] Gaby Vinick ET AL., *A minute-by-minute timeline of the fatal shooting of Alex Pretti involving federal agents*, ABC NEWS (Jan. 26, 2026), https://perma.cc/V4SY-9W3J.

[15] David McSwane, *Two CBP Agents Identified in Alex Pretti Shooting*, PROPUBLICA (Feb. 1, 2026), https://perma.cc/V94Y-WADB.

26. After the shooting, Secretary Noem said at a press conference Pretti was a domestic terrorist seeking to inflict "maximum damage" on law enforcement.[16]

//

//

27. Later release and analysis of video evidence has revealed that initial official accounts of Pretti's killing materially differed from the events depicted in the contemporaneous recordings. Noem later conceded that her original statement about Pretti was inaccurate.[17]

28. Minnesota state and local officials took the extraordinary step of filing suit and obtaining a federal court order requiring preservation of all evidence related to the fatal shooting of Alex Pretti. Those actions came after serious concerns were raised that key materials could be altered, withheld, or rendered inaccessible without judicial intervention. State investigators reported being denied access to the shooting scene despite possessing a warrant. They have since warned in court that, absent a preservation order, federal authorities could close their investigation and potentially destroy or retain exclusive control over critical evidence.[18]

29. The evolution of official accounts—alongside emerging video and eyewitness evidence—has heightened public concern that initial government statements may not fully reflect the events as they occurred. This underscores the need for disclosure of all contemporaneous recordings in the government's possession.[19]

**B. The agencies frequently record their deportation operations.**

30. It is ICE policy that agents use Body Worn Cameras ("BWC") "as soon as practicable at the beginning of an Enforcement Activity and deactivation when the activity is

---

[16] Myah Ward ET AL, *Trump keeps defending Noem. Allies see a warning sign*, POLITICO (Jan. 27, 2026), https://perma.cc/DK4Q-JZSA.

[17] Aaron Pellish, *Noem says her response to Pretti shooting may have been wrong*, POLITICO (Jan. 29, 2026), https://perma.cc/9MS9-83YB.

[18] *See, e.g.,* Katrina Pross, *State, feds clash in court over preserving evidence in Alex Pretti Killing*, SAHAN J. (Jan. 26, 2026), https://perma.cc/6NF6-CMGH.

[19] Hannah Schoenbaum, *Minnesota shooting of Venezuelan man is the latest where video evidence contradicts ICE accounts*, ASSOCIATED PRESS (Feb. 13, 2026), https://perma.cc/6NF6-CMGH.

concluded.[20] BWCs that have captured a "Critical Incident" are turned in for "docking, uploading, categorization and labeling at the conclusion of the Enforcement Activity."[21] Critical Incidents are events that occur when ICE agents are "directly involved in actions that result in the death of an individual."[22]

31. Given the extent of ICE activity in campaigns like Operation Metro Surge, the amount of BWC footage agents captured can be substantial due to the large presence of federal agents with BWCs. By February 2026 there were already around 3,000 federal agents combined in the Twin Cities.[23] Video footage recorded during ICE operations in Minneapolis has already been disclosed in connection with civil lawsuits against federal officials and agencies.[24]

32. In addition to capturing footage through BWC, ICE often engages special production crews to accompany its agents on certain missions. For at least 15 years, the agency has operated a program to record certain operations in a way that "feature[s] gripping, action-packed work that ICE does to protect the public and national security." [25]

33. Under that program, videographers employed or contracted by ICE (or other components of the U.S. Department of Homeland Security) regularly accompany agents during ICE Enforcement and Removal Operations ("ERO") operations. These ride-along practices result in the creation of extensive multimedia records capturing encounters between ICE agents and others.

---

[20] *See* ICE Directive 19010.3: Body Worn Camera (BWC) (Feb. 19, 2025), https://perma.cc/5L7A-96YV.

[21] *Id.*

[22] *Id.*

[23] *See* Meg Anderson & Steve Inskeep, *The Trump administration is reducing the number of federal agents in Minnesota by 700*, NPR (Feb. 5, 2026), https://perma.cc/3EBD-DFPF.

[24] *See, e.g.*, *Tincher v. Noem*, No. 0:25-CV-4669, 2026 WL 125375 (D. Minn. Jan. 16, 2026) at *5 (video footage of an arrest).

[25] See *ICE, ICE, CAMERA, ACTION!*, ICE.GOV, https://perma.cc/BU9E-EQ4X.

### C. CIR requests public records from ICE and CBP relating to agency operations in Minnesota.

#### 1. CIR requests records from CBP and ICE relating to the shooting deaths of Renee Good and Alex Pretti.

34. On January 26, 2026, CIR submitted FOIA requests to CBP and ICE for footage relating to the deaths of Renee Good and Alex Pretti. *See* Exs. 1–2.

35. Specifically, CIR asked the agencies to disclose all agency-created or agency-contracted "unedited video and audio recordings" related to those shooting incidents, including (1) body-worn camera footage, (2) handheld camera/cell phone recordings, (3) fixed surveillance systems, (4) vehicle-mounted cameras, (5) drone or aircraft footage, and (6) recordings created by the agencies' public affairs divisions or agency-funded content creators.

36. On March 4, 2026, CBP acknowledged receipt of the FOIA request and asserted that it would invoke a 10-day extension of time to respond to the request "pursuant to 6 C.F.R. Part 5 § 5.5(c)." *See* Ex. 3.

37. As of the filing of this action, and despite the requirements of 5 U.S.C. § 552(a)(6)(A)–(B), CBP has not notified CIR of the scope of public records it will produce or the scope of records that it plans to withhold in response to CIR's FOIA request.

38. On February 5, 2026, meanwhile, ICE unlawfully denied CIR's FOIA request in full, improperly asserting that all responsive records were exempt from disclosure in their entirety. *See* Ex. 4.

39. After CIR timely appealed ICE's determination, ICE responded on May 11, 2026, by (1) reasserting the improper exemption claim as to records relating to the shooting of Renee Good and (2) representing that it was referring one part of the FOIA request (*i.e.*, relating to the shooting of Alex Pretti) to CBP, which it represented to be the custodian of those records. Ex. 5.

#### 2. CIR requests records from CBP and ICE relating to deportation operations in Minnesota between January 8 and January 27.

40. On January 27, 2026, CIR submitted separate FOIA requests to both ICE and CBP seeking disclosure of recordings of agency operations in Minnesota that were captured

"by or on behalf of" the agencies between January 8 and January 27, 2026, "for public affairs, social media, communications, or promotional purposes." Exs. 6–7. Specifically, CIR requested (1) video files from cell phones, (2) DSLR footage, (3) cinema camera footage, (4) drone-mounted camera footage, (5) or other professional-grade recording devices. *Id.*

41. As of the filing of this action, and despite the requirements of 5 U.S.C. § 552(a)(6)(A)(i), neither ICE nor CBP has notified CIR of the scope of public records the agency will produce or the scope of records it plans to withhold in response to CIR's FOIA request.

**Cause of Action**

**Count I—Declaratory and Injunctive Relief**

**(Violation of FOIA, 5 U.S.C. § 552)**

42. CIR re-alleges and incorporates by reference the previous paragraphs as if fully set forth in this paragraph.

43. CIR's FOIA requests to Defendants were properly made and submitted to seek disclosure of agency records within Defendants' control.

44. Defendants are agencies subject to the FOIA, and they have failed to provide CIR with the required "determination" within the meaning of the FOIA in the timeframe required by law and/or have failed to disclose public records responsive to CIR's FOIA request as required by law.

45. There is no lawful basis for Defendants to withhold, in whole or in part, the records CIR has requested.

**Prayer for Relief**

CIR accordingly asks that the Court:

A. Provide for expeditious proceedings in this action;

B. Declare that the documents sought by CIR's FOIA request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

C. Declare that Defendants violated the FOIA by failing to provide the determination required by law within the timeframe specified by the FOIA;

D. Declare that Defendants violated the FOIA by failing to provide the public records responsive to CIR's FOIA requests;

E. Enter an injunction, pursuant to 5 U.S.C. § 552(a)(4)(B), directing Defendants to make the requested public records available to CIR, unredacted, and without further delay, and setting a deadline for compliance;

F. Award CIR its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

G. Grant CIR such other and further relief the Court may deem just and proper.

Dated: August 17, 2026

*/s/ Matthew S.L. Cate*

Matthew S.L. Cate (SBN 295546)
matt@matthewcatelaw.com
**LAW OFFICE OF MATTHEW S.L. CATE**
101 Montgomery Street, Suite 900
San Francisco, CA 94104
Tel/Fax: 415-964-4400

D. Victoria Baranetsky (SBN 311892)
**THE CENTER FOR INVESTIGATIVE REPORTING**
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 982-2890
Fax: (510) 849-6141
vbaranetsky@cir.org
bhenderson@cir.org

*Counsel for Plaintiff*