November 23, 2026

*Via CM/ECF*

Honorable Rita F. Lin
450 Golden Gate Ave, 16th Floor
San Francisco, CA 94102

Re: *CIR v. ICE, et al.*, No. 3:26-cv-02414-RFL

Dear Judge Lin:

The parties submit this letter regarding their dispute over defendants' rate of processing video footage potentially responsive to the requests at issue in this Freedom of Information Act ("FOIA") case. *See* Aug. 20, 2026 Order, ECF No. 25; Joint Case Mgmt. Statement, ECF No. 27.

**Plaintiff's Position**

FOIA obligates agencies to make public records promptly available. Defendants' current schedule, if allowed to stand, violates that duty and deprives CIR and the public access to the requested public records within the time required by law. Plaintiff ("CIR") asks the Court to order Defendant ICE to complete its review of the remaining roughly *four hours* of footage, and to disclose all nonexempt material responsive to CIR's requests on a rolling basis and to complete its review and final disclosures no later than February 26, 2027. CIR also asks the Court to order CBP to begin processing its footage at no less than two hours per month, to disclose nonexempt footage on a rolling, monthly basis, and to update CIR and the Court on a monthly basis, starting February 1, 2027, on the steps CBP is taking to improve its rate of review.

**Background.** This action concerns two FOIA requests, submitted January 26–27, 2026, seeking video footage relating to defendants' operations in Minnesota in January 2026. This period encompasses the government's controversial "Operation Metro Surge" activities in that state, including their agents' fatal shootings of Renee Good and Alex Pretti. *See* FAC.

ICE says 515 video files, comprising about five hours, are potentially responsive to the requests. *See, e.g.*, Ex. 1 at 5. It has committed to a monthly review rate of 30 minutes, with rolling productions. *Id.* While CIR awaits for ICE to electronically transfer about 37 minutes of footage ICE initially provided in a format CIR had not requested, ICE has disclosed 71 minutes of responsive footage to date. ICE says it needs seven to eight months to review under four hours of outstanding footage.

CBP, meanwhile, says it has found "over 1000 potentially responsive videos" comprising "over 155 hours of footage." Ex. 1 at 5. It has committed to a processing rate of 25 minutes per month, also with rolling productions. *Id.*; ECF No. 24 at 2. On November 6, 2026, CBP informed CIR that seven video files (of about four total minutes) are forthcoming. CBP has said it expects to complete its review of potentially responsive footage in *about 31 years*. Ex. 1 at 2.

Thus, it has been nearly 10 months since CIR submitted its FOIA requests and nearly eight since CIR filed suit. ICE has disclosed only 71 of about 300 potentially responsive minutes of footage.

CBP has disclosed four of 9,300 minutes. Neither agency has presented a plan to meaningfully pick up that pace.

**Argument.** FOIA obligates agencies to make all nonexempt public records responsive to FOIA requests "promptly available." 5 U.S.C. § 552(a)(3)(A). While promptness varies with circumstance, "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA." *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982). Courts "have a duty to prevent these abuses" arising from undue delays. *Id.*; *see also ACLU Found. of So. Cal. v. ICE*, 705 F. Supp. 3d 1077, 1092 (C.D. Cal. 2023) (ordering ICE to increase processing rate from 1,000 pages per month to 3,000 pages per month); *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("The FOIA imposes no limits on courts' equitable powers in enforcing its terms."). Accordingly, a court "may use its equitable powers to require the agency to process documents according to a court-imposed timeline." *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014). CIR's request to that the Cout order the agencies to increase their review rate and thereby comply with their statutory obligations is appropriate and reasonable.

For one, the Ninth Circuit has emphasized that the "value of information is partly a function of time." *Fiduccia v. U.S. DOJ*, 185 F.3d 1035, 1041 (9th Cir. 1999). Indeed, "[h]ardly anyone who needs information can anticipate having the same need for it, or use for it, 15 or eight years later." *Id.* The value of timely disclosure of the records at issue here is especially apparent, given that the agencies' January 2026 operations in Minnesota continue to be the focus of widespread scrutiny and demands for transparency. *See, e.g.*, Nicole Acevedo and Selina Guevara, *Parents of nurse killed by ICE demand DOJ release evidence in fatal shooting*, NBC News (Oct. 27, 2026), https://bit.ly/4zjuGjl; Meg Anderson, *Democrats plan to widen their probes of fatal ICE shootings*, NPR (Nov. 7, 2026), https://bit.ly/4zQuysR.

Further, CIR has repeatedly asked the agencies to provide information allowing CIR to assess whether the volume of records can be narrowed. *See* Ex. 1 at 1–2, 4. The suggestion below that CIR has "refused" to consider narrowing the requests and the assertion that it "has not responded to Defendants' request to consider such narrowing" are false. *See id.* CIR cannot meaningfully consider narrowing the requests when CBP has provided only limited information and ICE has not responded at all. *See id.* at 1. CIR will continue to consider ways to prioritize review and potentially narrow the volume of material. But it needs the agencies' cooperation.

The agencies argue that they cannot practically improve their review rate due to staffing concerns and increased FOIA-office workloads. *Id.* at 3, 5–6. But defendants have failed to "specifically [explain] why more staffing cannot be provided." *See* ECF No. 25 (ordering them to do so). For example, CBP has represented that it has more than 30 full-time staff members in its FOIA division. Ex. 1 at 5–6. Despite also representing that video review is resource-intensive and that the agency has 13 FOIA active cases involving video footage (in addition to CBP's other FOIA obligations), CBP to date has trained *only two employees* to process video. *Id.* at 1. CBP has not explained when any of the other employees will be trained to review video, and the agency's apparent position is that having more trained personnel will not meaningfully improve anything in this case. *See* Howard Decl. ¶ 35 (asserting, at most, reconsideration of the review rate "if feasible"). Similarly, ICE has said that it has one paralegal specialist assigned to CIR's requests in this case and that it is ICE's "standard practice" not to assign any other staff "absent extraordinary circumstances." Ex. 1 at 5. But agency adherence to a "standard practice" is not an

explanation for why more staffing *cannot* be provided; it is an assertion that the agency—at an institutional level rather if not at the level of strained FOIA offices—does not want to provide it. In any event, as ICE has explained, "extraordinary circumstances" may prompt ICE to allocate additional resources to a FOIA case, including "when a court has ordered it to do so." Ex. 1 at 3. And ICE is certainly capable of a faster review rate. *See* Cate Decl. ¶ 5, Ex. 7 ¶ 4 (ICE agreeing, in case filed a month after this one, to review footage at 45 minutes per month).

Meanwhile, Defendants' staffing arguments ring hollow when it is undisputed that they have kept FOIA-focused staffing levels about the same since fiscal year 2021, even as the number of FOIA requests received each year has roughly doubled. *See* Cate Decl. ¶ 3, Exs. 2–6; *see also* Howard Decl. ¶¶ 17–19 (noting increase in requests without reference to static staffing levels). The arguments are essentially no different than those Judge Orrick found lacking, six years ago, in ruling that ICE and other agencies "cannot use a predictably increasing workload to excuse their chronic failure to" comply with FOIA requests. *Nightingale v. USCIS*, 507 F. Supp. 3d 1193, 1207 (N.D. Cal. 2020). The conclusion that agencies cannot justify noncompliance with their FOIA obligations by pointing to problems they consistently decline to address applies squarely to this case, even though *Nightingale* involved different records and requested relief.

Defendants are multi-billion-dollar agencies that have plainly chosen not to equip themselves to prevent the type of delays manifesting in this case. The contention that they can review video at a monthly rate of about 30 minutes (and claim, in ICE's case, that the standard rate is *five minutes*, Clark Decl. ¶ 6) reflects "a policy choice by the executive branch to delay FOIA requests rather than" to otherwise act "to meet them in a timely way." *See Fiduccia*, 185 F.3d at 1041. The Court should not condone that choice or its unlawful effects here. CIR thus respectfully requests that the Court order the agencies to follow a processing schedule that moves the agencies closer to compliance with their duty to make the requested footage "promptly available" as required by law and as CIR set forth above.

**<u>Defendants' Position</u>**

While FOIA requires that "records shall be made promptly available," 5 U.S.C. § 552(a)(6)(C), the statute "prescribes no fixed timeframe within which an agency must produce non-exempt records." *Rolling Stone LLC v. DOJ*, 2024 WL 3862521, at *2 (S.D.N.Y. Aug. 19, 2024) (cleaned up). What satisfies this standard may vary according to a variety of factors, including the size of the request, the public interest in the documents, and the competing FOIA obligations of the agency. Indeed, the statute itself contemplates that agencies may create multiple tracks of varying speeds for the processing of requests. 5 U.S.C. § 552(a)(6)(D); *see also White v. FBI*, 851 F. App'x 624, 628 (7th Cir. 2021).

A processing timeline of years may be considered prompt under the circumstances of the particular case, such as where a plaintiff seeks a large number of documents and has refused to narrow the request "to make them more manageable or more likely to produce documents that actually shed light on the functioning of government." *White v. EOUSA*, 444 F. Supp. 3d 930, 943 (S.D. Ill. 2020). Indeed, courts routinely approve FOIA processing rates that would result in schedules comparable to, or even much longer than, what the agencies have committed to here. *See, e.g.*, *id.* at 942 (nine-year schedule), *aff'd*, 851 F. App'x 624; *ACLU v. DHS*, 2021 WL 5449733, at *2 (S.D.N.Y. Nov. 19, 2021) (18-month schedule under agency's standard

processing rate was "reasonable"); *Freedom Watch v. BLM*, 325 F. Supp. 3d 139, 142 (D.D.C. 2018) (41-year schedule); *Negley v. DOJ*, 305 F. Supp. 3d 36, 46 (D.D.C. 2018), *aff'd.*, 2018 WL 4148608 (D.C. Cir. Aug. 14, 2018) (approving interim release rate even though it would take more than 80 years to produce the pages at issue and the requester was over 70); *Martinez v. DOJ*, 2023 WL 9781681, at *1 (D.D.C. Sept. 27, 2023) (40-year schedule).

In determining an appropriate rate, "courts often give deference to the agency's release policies," and will consider the "size and compelling need of the request compared to others, as well as the effect of the request on the [agency's] ability to review other FOIA requests." *Colbert v. FBI*, 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018). If the Court were to order faster production here, it would result in other, perhaps more time-sensitive and longer-pending, requests being moved further back in the queue. *See Rolling Stone*, 2024 WL 3862521, at *3; *Martinez*, 2023 WL 9781681, at *1. That the agencies' proposed processing rate here may result in a long production period does not justify prioritizing the requests at issue in this case over other FOIA requesters who may have a more compelling need.

Indeed, Plaintiff's requested schedule would further burden the agencies' already overtaxed FOIA processing resources. Every moment the agencies' FOIA processors are required to spend reviewing records for Plaintiff's requests is a moment that those FOIA processors are diverted from processing and releasing records in response to other litigations, and in response to FOIA requests that are still in the administrative phase. In other words, the highly burdensome schedule that Plaintiff asks the Court to order here would exacerbate the very FOIA processing issues (for itself and for others) that Plaintiff decries in this discovery letter.

Plaintiff provides just a single sentence explaining its purported need for an accelerated schedule here: the agencies' January 2026 operations in Minnesota "continue to be the focus of widespread scrutiny and demands for transparency." *Supra*. But the same could be said for any number of government programs. Plaintiff fails to show that ordering the agencies to increase their review rate by more than four times the standard is necessary or appropriate here.

Nor does Plaintiff provide any caselaw supporting their demand for an accelerated review of videos here. *See supra*. Plaintiff cites a handful of cases ordering increased processing for documents in different circumstances, but none of these cases addressed the particular challenges of reviewing videos under FOIA. *See id.* Nor do these cases stand for the proposition that courts can order agencies to hire or train additional FOIA reviewers, as Plaintiff's request for updates on a "monthly basis" apparently contemplates.

Finally, as Plaintiff acknowledges, meet-and-confer efforts to potentially narrow the scope of responsive records remain ongoing. Indeed, Defendants have asked whether Plaintiff would be willing to "narrow the focus to videos covering certain more specific time periods," rather than the entire nineteen days' worth of video footage that Plaintiff has requested. *See* Ex. 1 at 5; *see also* Dkt. 23-6 & 23-7; *see also* Dkt. 23-1 & 23-2. As of this filing, Plaintiff has not responded to Defendants' request to consider such time-period narrowing, which potentially could significantly reduce the universe of records to be reviewed.

In addition to these general points, Defendants provide additional responses from each specific agency, below.

**ICE**

**1. The Proposed Schedule is Unrealistic and Overburdens Agency Resources**
Plaintiff demands that ICE complete the processing of all potentially responsive video footage by February 26, 2027. This demand ignores the operational realities of the ICE FOIA Office. As detailed in the declaration of Dr. Kenneth N. Clark, Assistant Director of ICE's Office of Information Governance and Privacy (OIGP), the ICE FOIA Office faces severe, persistent workload and backlog pressures, operating with finite staffing levels while FOIA requests have increased in complexity and volume. Clark Decl. ¶¶ 7-9. Assigning specialized personnel to intensive video review requires careful frame-by-frame analysis to ensure proper application of FOIA exemptions—particularly privacy and law enforcement protections under Exemption 7—without draining resources from other statutory obligations of the ICE FOIA Office. *See id.* ¶¶ 11-12, 15-17.

**2. ICE's Proposed Concession Balances Transparency and Workload**
Despite these severe resource constraints, ICE has acted in good faith to move productions forward. ICE has identified approximately 515 video files comprising roughly five hours of footage, made its first production on October 14, 2026, its second production on November 17, 2026, and is actively working through rolling disclosures. While ICE's standard processing rate for complex video media under current staffing limitations is approximately 5 minutes per month, ICE has agreed to significantly increase its output and process at least 30 minutes of video footage per month—*six times* its baseline rate. *See* Clark Decl. ¶¶ 13, 17. With slightly less than four hours of footage remaining to process, production at the current rate of 30 minutes per month should be complete by June or July, 2027, at the latest.

This proposed commitment demonstrates ICE's good-faith effort to provide prompt access without court-imposed mandates that would cripple agency operations. Accordingly, the Court should decline Plaintiff's request for judicial intervention regarding processing rates.

**CBP**

As set forth in the attached Declaration of Patrick Howard, CBP's FOIA Division currently employs just 35 FOIA processors for the entire 60,000-employee agency. CBP Decl. ¶ 10. Currently, just two of those processors are sufficiently trained to independently review videos—the subject of Plaintiff's requests—without secondary technical review by the fully-trained processors. *Id.* ¶ 29. Although CBP is currently training additional processors on video review (and has committed to conferring with Plaintiff on the schedule if such additional resources become available), based on its current resources, CBP has committed to its standard video processing rate of at least 25 minutes of video per month for this case. *See id.* ¶¶ 28-29, 35.

Plaintiff's request to increase CBP's rate of video review above its standard rate "would materially slow or delay processing of other requests, increase CBP's backlog, and would create a risk of missing other deadlines, including court-ordered ones." *Id.* ¶ 31; *see also id.* ¶¶ 30-35. The agency is already facing an enormous backlog of FOIA request, *see id.* ¶¶ 17-18, and the forced prioritization of Plaintiff's requests over those of other members of the public would directly impede CBP's ability to timely process those other pending requests. *See id.* ¶¶ 30-35.

Respectfully submitted,

Date: November 23, 2026

**Law Office of Matthew S.L. Cate**

*/s/ Matthew S.L. Cate*
Matthew S.L. Cate

*Counsel for Plaintiff*

Date: November 23, 2026

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Kelsey J. Helland*
KELSEY J. HELLAND
Assistant United States Attorney

Attorneys for Defendants

**ATTORNEY ATTESTATION**

I hereby attest, pursuant to Local Rule 5-1(i)(3), that I obtained the concurrence in the filing of this document from the signatories indicated by the conformed signature (/s/).

*/s/ Matthew S.L. Cate*
Matthew S.L. Cate