CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J.HELLAND (CABN 298888)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-6748
Kelsey.helland@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING,<br><br>Plaintiff,<br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | CASE NO. 3:26-CV-02414-RFL |

**DECLARATION OF KENNETH N. CLARK, Ph.D.**

I, Kenneth N. Clark, Ph.D., pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Assistant Director of the Office of Information Governance and Privacy ("OIGP") at U.S. Immigration and Customs Enforcement ("ICE"), a component of the U.S. Department of Homeland Security ("DHS"). I have held the Assistant Director position since August 18, 2019. Prior to this position, I served as Deputy Assistant Executive Director for the Law Enforcement Information Sharing Initiative in the Homeland Security Investigations directorate.

2. OIGP oversees the management, sharing, protection, and disclosure of ICE data and information in accordance with law, policy, and standards. OIGP implements the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, at ICE and collaborates with ICE and DHS partners to build privacy protections into ICE programs and systems and to develop data governance solutions.

3. OIGP is comprised of two units: the ICE FOIA Unit and the ICE Privacy Unit. As Assistant Director, I oversee both units. The ICE FOIA Director leads the ICE FOIA Unit and reports to me, and ICE FOIA staff are organizationally located within that unit in OIGP. Through the ICE FOIA Director, I receive regular briefings on FOIA staffing levels, workload, backlog, and litigation demands, and I am involved in decisions regarding FOIA resource allocation and prioritization. As a result, I am familiar with the day-to-day operations and litigation workload of the ICE FOIA Office.

4. My official duties and responsibilities as the Assistant Director include the general management, oversight, and supervision of the Office of Information Governance and Privacy. In that capacity, I am the ICE Senior Executive Service official responsible for directly supervising the ICE FOIA Director, who in turn supervises two Deputy Directors. The Office of Information Governance and Privacy's responsibilities include responding to requests for records under the FOIA, the Privacy Act, and other applicable records access statutes and regulations. The ICE

FOIA Director and two Deputy Directors manage and supervise a staff of ICE FOIA Paralegal Specialists and contractors, for the processing of FOIA and Privacy Act requests received by ICE. Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act.

5. The statements in this declaration are based on my personal knowledge, my review of records maintained in the ordinary course of ICE business, and information provided to me in the course of my official duties by personnel within OIGP and the ICE FOIA Office.

6. I submit this declaration in my official capacity in support of ICE's compliance with the Court's text order on November 13, 2026, requiring the parties to submit a joint letter brief on the parties' dispute over the sufficiency of Defendants' (ICE and U.S. Customs and Border Protection) rate of review of video footage responsive to Plaintiff's FOIA requests. My declaration, submitted in support of ICE's position, provides a description of ICE's standard procedures for processing FOIA requests, its current processing and production capacity, and explains the reasons for the limitation on the number of minutes ICE is able to process each month in this case, which is currently well above the normal processing rate of 5 minutes per month.

***<u>Current Workload of the ICE FOIA Litigation and Disclosure Unit</u>***

7. There has been an increase in the complexity and volume of ICE FOIA's workload which has created a much larger pool of cases that are potentially primed for federal litigation.

8. The ICE FOIA's workload has increased such that as of November 20, 2026, it is handling 266 active FOIA federal litigations. Of these, 158 litigations have monthly rolling productions, 17 of which are subject to court orders. Currently, ICE's normal processing rate for cases in litigation is 500 pages or 5 minutes of media files, per month, per case. This means that,

on average, the ICE FOIA Litigation Unit is processing approximately 76,000 pages of potentially responsive records per month only for cases in litigation, excluding video media.

9. Notably, there has also been an increase in the number of FOIA requests submitted to ICE. The ICE FOIA Office is processing approximately 9,549 open FOIA requests that are not in litigation, 6,285 of which are backlogged and are being addressed. Additionally, the FOIA requests received by ICE FOIA have become increasingly complex, both in terms of volume and substance. These increasingly complex, detailed requests often require searches across numerous program offices and frequently yield thousands of pages of potentially responsive records requiring review and processing. Further, these complex FOIA requests require more time to process because of the extensive searches required and the complexity of the documents and data produced.

10. In response to the increasingly heavy workload, the ICE FOIA Office has adopted the court-sanctioned practice of generally handling backlogged requests on a "first-in, first-out basis," which ensures fairness to all FOIA requesters by not prioritizing one request over another.[1] This practice applies to requests that are in litigation. The reason for this is that the principle of fairness to all requestors would be jeopardized were a requestor was allowed "the head of the line" simply by filing a lawsuit.[2]

***Duties and Workload of the ICE FOIA Litigation and Disclosure Unit***

11. The ICE FOIA Litigation and Disclosure Unit works on FOIA Litigation. It drafts search taskings, as well as assigns and tracks all searches for responsive documents concerning

[1] *Open America v. Watergate Special Prosecution Force,* 547 F.2d 605, 614-16 (D.C. Cir. 1976) (the court acknowledged that the FBI's policy of "first-in, first out" for FOIA requests would prevent the alternative "first into court, first out of the agency" which would result should priority be given to requesters who file lawsuits).

[2] *Id.*

FOIA litigations. The FOIA litigation search taskings frequently span dozens of ICE program and field offices and require the Unit to keep track of hundreds of thousands of responsive records, as well as the documentation from searches of program and field offices.

12. The ICE FOIA Litigation and Disclosure Unit is also responsible for other legally required duties in addition to processing documents pursuant to litigation. For example, it must prepare various reports for statistical tracking, responds to congressional inquiries and requests for records, redacts Prison Rape Elimination Act reports, sends out FOIA Exemption (b)(4) submitter notices, and manages litigation consultations and referrals from and to other agencies. The Unit also responds to requests for body worn camera footage for discovery demands related to District Court Litigation which must also be processed for applicable redactions. Additionally, it supports ICE Office of the Principal Legal Advisor (OPLA) attorneys with FOIA litigation by assisting in the creation of *Vaughn* indices, reviewing declarations, and coordinating on joint status reports to the court.

13. To meet its obligations for all cases in litigation by ensuring that all FOIA matters progress and each requester receives a response, the ICE FOIA Litigation and Disclosure Unit typically cannot process more than 500 pages or 5 minutes of media files per month per case. Any increase in production for one case will inevitably hinder the Unit's ability to process records for production and perform its other legally required duties.

14. Moreover, the ICE FOIA Litigation and Disclosure Unit generally cannot *produce* a set number of pages per month. Depending on the responsiveness rate of records located in response to a search tasking, it is possible that the processors would have to review hundreds or even thousands of pages in order to identify the requisite number of responsive pages to meet a production – *as opposed to a processing* – requirement.

***<u>Rationale for Limiting Video Processing</u>***

15. This litigation involves only video footage. There are several reasons that the ICE FOIA Office generally limits video footage processing to 5 minutes per month as follows:

- Frame-by-Frame Complexity: Standard video runs at 24 to 30 frames per second (1,440 to 1,800 frames per minute). Redacting (blurring) a face, nametag, or screen that moves across a dynamic scene requires tracking every frame to ensure exempt material does not flash on screen for even a fraction of a second.

- High Staffing-to-Footage Ratios: Redacting one *minute* of complex law enforcement video can require anywhere from one to several *hours* of manual review and editing, depending on camera stability, lighting, the number of subjects in frame, and the resolution quality of the video.

- Dual Audio and Visual Review: If audio is included in the video footage, reviewers must simultaneously scrub audio tracks in real time (or slower) to audio redact names and other personally identifiable information of third parties and any law enforcement sensitive tactical communications.

- Equitable Queue Allocation: Under federal FOIA multi-track processing rules, ICE allocates a finite number of specialized media-redaction specialists and software licenses across thousands of requests. Committing an analyst to process large volumes of footage for a single requester would halt processing for all others in the queue.

16. Additionally, each ICE production requires a second-line review by an ICE FOIA litigation supervisor to ensure consistency and accuracy in terms of FOIA exemptions applied. Then, each ICE production requires a final review by an OPLA attorney to determine the legal sufficiency of the withholdings. Thus, with video footage, the frame-by-frame review at on

average 1440 to 1800 frames per minute (or 7,200 to 9,000 frames per 5 minutes) is conducted at least *three* times before release to the requester.

17. Given the substantial administrative and technical burdens associated with the process for video footage described above, requiring ICE to process significantly more minutes of video footage per month in this case would divert resources to Plaintiff's FOIA requests negatively impacting other FOIA requesters in the queue and the other legally required duties the ICE FOIA Office performs. For example, for the month of October 2026, the ICE FOIA Litigation and Disclosure Unit processed 287 minutes and 24 seconds of video related to FOIA lawsuits and discovery requests for other district court lawsuits. At an average rate of one to *several* hours per minute, that equates to roughly 300 to 1200 hours of work, or at least two to eight ICE FOIA Office employees working full-time on video media alone. ICE has already agreed to process 30 minutes of video footage per month, *six times* the normal processing rate. Therefore, ICE respectfully requests that the Court deny Plaintiff's request to increase the processing rate per month.

Executed on November 23, 2026, at Washington D.C.

KENNETH N CLARK

Digitally signed by KENNETH N CLARK
Date: 2026.11.23 15:01:30 -05'00'

Kenneth N. Clark, Ph.D.
Assistant Director
Office of Information Governance and Privacy
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009