UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | Civil Action No. 3-26-cv-2414 |

**DECLARATION OF PATRICK HOWARD**

I, Patrick A. Howard, declare the following to be true and correct:

1. I am the Director within the Freedom of Information Act Division (FOIA Division) at U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have been the Director since November 15, 2026. In this capacity, I oversee a staff of Branch Chiefs (BC), Subject Matter Experts (SME) and Government Information Specialists (GIS) who are involved in the processing of requests for records submitted to CBP pursuant to FOIA, 5 U.S.C. § 552, the Privacy Act (PA), 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions. Prior to this position, I served as the Acting Director of the FOIA Division starting in August 2026, and as a Branch Chief overseeing litigation since 2015.

2. I am familiar with CBP's procedures for responding to FOIA requests. I provide technical and administrative supervision and direction to a group of FOIA specialists in

processing FOIA requests, and I assist with FOIA/PA litigation matters. I am personally familiar with the processing of FOIA/PA responses, including, at times, by directly reviewing for adequacy and compliance with federal laws and regulations. I am familiar with the FOIA requests at issue in this litigation, dated January 26, and January 27, 2026. These FOIA requests were made by Center for Investigative Reporting ("Plaintiff"). I am also familiar with the court's November 13, 2026, order in this matter directing the Defendants to send Plaintiff a draft letter by November 20, 2026, and both parties to file their joint submission by November 23, 2026.

3. The statements I make in this declaration are based upon my personal knowledge, which includes knowledge acquired through information furnished to me in the course of my official duties and agency files that I personally reviewed in the course of my official duties.

4. This declaration provides an overview of the FOIA Division's process for responding to FOIA requests, describes the FOIA Division's current workload and resource constraints, situates Plaintiff's FOIA requests in that context, and describes the Agency's plan for completing its response to Plaintiff's requests.

## CBP's Process for Responding to FOIA Requests

5. CBP is a law enforcement agency comprised of more than 60,000 employees charged with enforcing hundreds of Federal statutes. Approximately 45,000 of those employees are armed law enforcement officers engaged in carrying out CBP's expansive border security mission (U.S. Border Patrol Agents, CBP Officers, and CBP Air and Marine Agents).

6. Broadly, the FOIA Division at CBP reviews FOIA requests, determines whether responsive records exist, and, if so, whether they can be released in accordance with the FOIA. In processing such requests, the FOIA Division consults with CBP personnel and, when

appropriate, with other components in the Department of Homeland Security (DHS), as well as other Executive Branch agencies or components.

7. Generally speaking, when CBP receives a FOIA request that reasonably describes the records requested and otherwise complies with the Agency's rules and applicable law governing the procedures for FOIA requests, CBP must search for, and retrieve, potentially responsive records.

8. Once CBP has completed its search and located potentially responsive records, it must process them for release. Processing records for CBP equities requires: (1) reviewing records for responsiveness to the request (and, if applicable, removing duplicates); and (2) reviewing responsive, nonduplicative records to excise and withhold information that falls within any one of the FOIA's nine statutory exemptions from disclosure. *See* 5 U.S.C. § 552(b).

9. To review responsive records for information exempt from disclosure, a CBP FOIA processor must: (1) meticulously examine, line-by-line, each responsive page or video frame to identify potential redactions and ensure all non-exempt material is segregated for release; (2) apply redactions (if necessary); and (3) individually label each redaction (which could be a name, email address or phone number, a single word or phrase, or substantial portions of a document), with the applicable exemption(s).

<u>CBP's FOIA Processing, Workload, and Current Resource Constraints</u>

10. As mentioned above, most of CBP's staff are engaged in law enforcement. The FOIA Division currently employs thirty-five (35) full-time Government Information Specialists (GIS), four (4) FOIA assistants, three (3) supervisory branch chiefs, fifteen (15) contractors and one (1) Director. None of these employees are attorneys. FOIA assistants mainly work on

retrieving records for processing and otherwise assisting with responses to simple FOIA requests for traveler information.

11. A GIS, sometimes referred to as a FOIA processor, is tasked with reviewing information and providing advice and assistance to managers and employees concerning FOIA issues, policies, and procedures. A GIS is also responsible for reviewing the request and tasking the appropriate CBP operational components with conducting the search. They further review the operational components' responses and questions and determine whether any supplemental searches are required. A GIS is also responsible for processing FOIA requests for CBP records, a process that involves reviewing the content of records to determine the proper disclosure under FOIA. A GIS is responsible for reviewing and preparing draft responses to requests for releases of information, and in so doing, must apply any relevant statute, regulation, agency rule and/or executive order as they pertain to FOIA requests. Additionally, a GIS must ensure compliance with DHS regulations, Department of Justice policies, and other applicable laws.

12. A Branch Chief in the FOIA Division is responsible for managing policy formulation, advising Agency management, and ensuring compliance with federal laws governing the flow and disclosure of information. Branch Chiefs oversee the release of CBP documents and information, assist with FOIA litigation matters, and oversee the processing of FOIA responses and adherence to federal laws and regulations. The Branch Chief position overseeing litigation is currently vacant. A senior GIS is handling these duties with my assistance as the Director.

13. The FOIA Division identifies incoming FOIA requests as either simple or complex. A simple request—also referred to as a traveler request—is one where a member of the traveling public requests records related to his or her travel. Examples of traveler requests

include records of a person's entry into and exit from the United States, I-94 records, and records of inspections and interactions with CBP employees. The FOIA Division generally has access to CBP's travel database systems and is able to query the systems in order to respond to simple FOIA requests.

14. Complex FOIA requests—also referred to as non-traveler requests—are all other types of requests received. Examples of complex requests include requests from businesses for import and export records, requests for Office of Professional Responsibility (OPR) investigation files, and requests from media sources or special interest groups focused on a variety of matters not specific to an individual traveler. When the FOIA Division receives a complex request, the FOIA Division must first determine which CBP offices are likely to have responsive information and then work with those offices to gather any responsive records. Assessments of where responsive records are likely to be maintained are based on a review of the content of the request itself and the nature of the records sought, as well as the FOIA Division's familiarity with the types and location of records that each office maintains and discussion with knowledgeable Agency personnel. Potentially responsive records may be located in one or multiple systems of records, email systems, computer hard drives, and/or hard-copy files.

15. Based upon my experience, in a typical fiscal year, approximately 85% of the total volume of FOIA requests will be simple requests and 15% of the total volume will be complex requests.

16. Plaintiff's FOIA request at issue in this litigation is a complex request.

17. The FOIA Division's caseload, which was already significant, dramatically increased in Fiscal Year 2017, and has more than doubled since that year. Specifically, the Agency received: 88,937 FOIA requests in Fiscal Year 2017; 87,392 in Fiscal Year 2018; 82,278

in Fiscal Year 2019; 80,457 in Fiscal Year 2020; 108,181 in Fiscal Year 2021; 132,117 requests in Fiscal Year 2022; 147,363 in Fiscal Year in 2023; 179,489 in Fiscal Year 2024; 207,396 in Fiscal Year 2025; and 166,314 in Fiscal Year 2026. The Fiscal Year runs from October 1 to September 30.

18. The FOIA Division continues to manage an extensive backlog of requests. Currently, the FOIA Division has 115,270 pending requests (9.3% increase since the end of Fiscal Year 2026). The FOIA Division carries a backlog of 103,585 pending requests that have not been satisfied (11.8% increase since the end of Fiscal Year 2026).

19. Despite an extensive backlog of requests, CBP has continued to work tirelessly to reduce the number of requests in the backlog. In FY 2025 CBP processed 231,942 requests and in FY 2026 CBP processed 174,701 requests[1], successfully reducing the backlog in both fiscal years.

20. CBP has more than 150 pending FOIA litigation cases at this time.

21. The continued high number of FOIA requests submitted to the Agency has kept the FOIA Division under considerable stress, as its limited FOIA processing staff and resources struggle to keep up with this workload.

<u>CBP's Processing Capabilities for Plaintiffs' FOIA Request</u>

22. As I noted above, normally the vast majority (approximately 85%) of FOIA requests that CBP receives are simple requests that seek one or more of certain categories of travel records related to an individual. Those records often require minimal redactions due to their display format, and any redactions are generally routine.

[1] CBP was able to reduce the backlog in FY 2026 despite a federal government lapse in funding (October 1, 2025, through November 12, 2025) and a DHS specific lapse in funding (February 14, 2026, though April 30, 2026).

23. The records sought by Plaintiffs are substantively different from the types of records CBP routinely processes, and more extensive efforts to search, review and redact these records are required.

24. The complexity of the records at issue here also requires a correspondingly more extensive and complex review process. CBP employs a multi-office review process to ensure that all information that must be protected from release is properly withheld, and that all information that can be released is provided to requestors. Each page or video that CBP produces, in this and other complex litigation, will be reviewed multiple times.

25. Because Plaintiff's FOIA request is in litigation, attorneys in the CBP Office of Chief Counsel are also involved, in addition to FOIA Division employees. After the initial and secondary review by the FOIA Division, Office of Chief Counsel attorneys may conduct, or answer questions pertaining to, reviews for responsiveness and redactions for applicable FOIA exemptions. They may also assist with the identification of what, if any, outside agency equities exist in potentially responsive records.

26. No attorneys in the CBP Office of Chief Counsel are solely responsible for FOIA matters; rather, they all have other responsibilities outside of the FOIA context. Therefore, these attorneys are unable to devote all of their time to this level of review.

27. In addition, agencies and individuals outside of CBP also may be involved in the review. The FOIA Division coordinates with the Department of Homeland Security (DHS) to perform a final review of most releases. The non-exempt portions of responsive records are provided to the FOIA Division to release, as appropriate, to Plaintiffs, only after all of these levels of review are completed.

28. CBP's normal processing rate for cases in litigation is to process 500 pages a month, 25 minutes of video, or a combination of both. Each complex release requires substantial time regardless of the volume of documents or videos involved, due to matters such as the need for multi-part searches, coordination of review, novel questions or judgment decisions that must be decided within CBP, and the potential need for consultations. Preparing records for release to the public is also time-consuming. Thus, as there are more scheduled releases, CBP has less time and fewer resources to devote to the review of records and ensuring that the review is being conducted in the most efficient manner possible.

29. CBP's FOIA Division can currently process 25 minutes of video per month. The redaction of video is a highly resource intensive, manual frame by frame process, requiring multiple layers of review. Video also requires the reviewer to repeatedly listen to audio and mask exempt segments with redactions. Regarding staffing, CBP's FOIA Division currently faces significant resource constraints regarding video processing, of the approximately 35 full-time GISs in the FOIA Division, only two employees currently process videos independently, without requiring secondary technical oversight of the video processing. The FOIA Division is currently training additional employees to be proficient in video redaction.

30. Given the sheer number of FOIA requests seeking these and similar records, CBP's FOIA processing resources are already under tremendous strain. The entry of production orders in excess of 500 pages or 25 minutes of video per month has a direct and serious impact on CBP's overall FOIA program, resulting in an increased backlog for simple and complex requests that CBP has worked tirelessly to decrease. An increased backlog raises the risk of additional litigation and, more importantly, prevents CBP from getting information to the people requesting it.

31. As described below, processing at a greater rate than 25 minutes of video per month in this case would materially slow or delay processing of other requests, increase CBP's backlog, and would create a risk of missing other deadlines, including court-ordered ones.

<u>The Effect of a Court-Ordered Processing Schedule on Other Requests Before CBP</u>

32. Ordinarily, CBP processes requests on a first-in, first-out basis.

33. When CBP is given a court-ordered processing schedule, the effect is to move that request ahead of earlier-filed requests, causing other filers to suffer a delay in the processing of their request.

34. As stated above, the FOIA Division is currently training additional staff to assist with video processing. However, at the present moment, if CBP is ordered to process materially more than 25 minutes of video per month, it will further strain CBP's FOIA Division. It is anticipated that the FOIA Division would have to pull a large number of its staff members off of their current projects, which include processing and review of other litigations and administrative requests, to aid in the processing of this litigation to meet this Court's order. While these staff members are proficient at document processing, they currently lack the technical proficiency to process video footage and require significant secondary technical oversight from the two full-time GIS who specialize in video processing. This strain will result in other FOIA requesters including requesters who made their requests first, and those who lack the resources to litigate—not receiving material related to their FOIA requests. An order to process more than 25 minutes of video per month in this matter could also potentially lead to other litigation deadlines being missed. Missing other litigation deadlines and/or not processing administrative FOIA requests will lead to more litigation and, likely, more aggressive court-ordered processing schedules in other matters, which could further limit the Agency's ability to process requests not in litigation.

35. In sum, based on the nature of Plaintiffs' request and the limitations on CBP's resources, as discussed above, I do not believe CBP could currently achieve a faster average processing schedule than 25 minutes of video per month without diverting resources from and thereby unduly prejudicing other earlier-filed FOIA requests and FOIA requests that are subject to other court-ordered processing schedules. If circumstances materially change (i.e. due to staffing or software capabilities), CBP will notify the parties and is willing to revisit this determination if feasible. Relatedly, if CBP is able to process Plaintiffs' request at a faster rate (i.e., due to the nature of the search or documents or video), it will endeavor to do so without a court ordered processing schedule.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 20th day of November, Washington, D.C.

Patrick Howard

______________________________

Patrick A. Howard